# In the United States Court of Federal Claims

No. 24-1193C

(Filed Under Seal:  September 13, 2024)

(Reissued for Publication: September 19, 2024)

|  |  |
|---|---|
| **ASSESSMENT AND TRAINING SOLUTIONS CONSULTING CORPORATION,** | ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| **THE UNITED STATES,** | ) ) |
| *Defendant,* | ) ) |
| And | ) ) |
| **PATRIOT GROUP INTERNATIONAL, INC.,** | ) ) ) |
| **Defendant-Intervenor.** | ) ) |

*Jeremy S. Scholtes*, Miles & Stockbridge PC, Frederick MD, for Plaintiff.  With him on the briefs were Roger V. Abbott and Lauren S. Fleming.

*Steven M. Mager*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, *Patricia M. McCarthy*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch.  Of counsel were Sandy Caruco and Erin Frazee Masini, Central Intelligence Agency, Office of General Counsel.

*Ryan C. Bradel*, Ward & Berry PLLC, Tysons, VA, for Defendant-Intervenor.

**OPINION AND ORDER**

**SOLOMSON, Judge.**

Defendant, the United States, acting by and through the Central Intelligence Agency ("CIA"), awarded an approximately $115 million contract to Defendant-

Intervenor, Patriot Group International, Inc. ("PGI"), to provide international tactical and non-tactical medical support services pursuant to Request for Proposal No. 2021-20111000001S (the "RFP" or "Solicitation").[1] Plaintiff, Assessment and Training Solutions Consulting Corp. ("ATSC"), challenges the CIA's contract award to PGI on the grounds that PGI's proposal allegedly violated the Solicitation's font-size restrictions, thereby giving PGI an unfair advantage and rendering its proposal ineligible for award.

During the Court's initial status conference, the Court warned ATSC that if its proposal in any way relied reflected PGI's (and the government's) interpretation of the RFP provisions at issue, ATSC would lose this case just as it lost its protest before the Government Accountability Office. *See Assessment & Training Sols. Consulting Corp.*, B-421575.3, 2024 WL 3687959, *6 (Comp. Gen. July 16, 2024) ("*ATSC*") ("The protester's proffered interpretation is also belied by its own proposal which includes several tables that include text."). Ultimately, in considering ATSC's motion for a preliminary injunction, the Court's review of the parties' respective proposals demonstrated exactly that: both ATSC and PGI read the Solicitation to permit narrative text displayed in a table, presumably in order to take advantage of such tables' lower font-size minimum and thus to cram more information into their proposals.

The pot may choose to call the kettle black, but it is a surefire way to lose a case. Whether the flaw in ATSC's argument is best understood as a lack of prejudice or a waiver, ATSC cannot complain about how PGI formatted its proposal when ATSC did the same thing.

Moreover, ATSC's request for injunctive relief fails on multiple grounds. This procurement has been pending since May 24, 2021. Given the three-plus years that have elapsed, and the nature of the services at issue, the government must be permitted to move forward with the procurement. Although the Court is generally not moved by talismanic invocations of national security, that is not what the government offers here in opposition to ATSC's request for an injunction. The government has provided sufficient detail to persuade the Court that issuing an injunction would be ill-advised on national security grounds even if ATSC had demonstrated some likelihood of success on the merits. Regardless, ATSC's likelihood of success on the merits is nil, and the Court directs the entry of judgment for the Defendants.

I.  **PROCEDURAL BACKGROUND**

The GAO decision contains a thorough summary of this procurement, the CIA's evaluation of proposals, and the protest history before the GAO. *ATSC*, 2024 WL 3687959, *1-2. Having lost its protest in that forum, ATSC filed its complaint in this Court on

---

[1] Although aspects of this procurement are classified, as were some of the filings in this case, this decision does not contain any classified information.

August 5, 2024, challenging the contract award to PGI pursuant to 28 U.S.C. § 1491(b). ECF No. 1 (Compl.) ¶ 3. ATSC's complaint alleges a single count of error: the government "unreasonably relaxed the solicitation's formatting requirements in PGI's favor and gave PGI an unfair competitive advantage when it failed to disqualify PGI . . . for PGI's failure to follow the solicitation instructions in its proposal by violating the solicitation's font size, line count, and page count requirements." Compl. at 12 (Count I). This is substantially the same objection ATSC raised in its GAO protest. *ATSC*, 2024 WL 3687959, *3 (noting that "the gravamen of [ATSC's] protest" is "that PGI violated the solicitation's formatting requirements for font size and format in the technical/management and past performance volumes of its proposal, such that the agency should have disqualified PGI from the competition").

ATSC's complaint rests on the correct premise that the RFP "generally required that text be formatted with a minimum size of 12-point font" but that "[a]s an exception to this rule, the RFP allowed a minimum size of 8-point font for illustrative exhibits, which include 'tables, charts, graphs, and figures.'" Compl. at 2. According to ATSC, "PGI gambled that if it could get away with squeezing a huge amount of additional information into its proposal by circumventing the font size requirements and page limitations, it could obtain an unfair competitive advantage and win the award." *Id.* (emphasis removed). ATSC alleges that PGI's proposal is a "case of the exception swallowing the rule" — because "approximately 50 percent of PGI's Proposal Volume II and all of Volume III are in 8-point font" — and that "[t]he Agency inexplicably opted to let PGI get away with this." *Id.*

ATSC also filed a motion for a preliminary injunction and temporary restraining order. ECF No. 4. On August 7, 2024, following a preliminary status conference, the Court entered a scheduling order, requiring the government and PGI to respond to ATSC's motion for a preliminary injunction. ECF No. 16. On August 16, 2024, both the government and PGI filed timely responses to ATSC's motion. *See* ECF Nos. 23-25. Although the Court previously had set oral argument on ATSC's motion for August 22, 2024, the Court instead convened an earlier teleconference on August 20, 2024, to discuss the parties' arguments. At the end of that teleconference, the Court indicated for the reasons explained below that it would deny ATSC's motion for a preliminary injunction and enter judgment on the merits for the government and PGI. Given the Court's rationale, the parties agreed that there is no need for any additional briefing or the Court's further consideration of the case with a complete administrative record.

## II. STANDARD OF REVIEW

### A. Administrative Procedure Act Review

Pursuant to 28 U.S.C. § 1491(b)(4), this Court applies the standard of review contained in the Administrative Procedure Act ("APA") § 10(c), 5 U.S.C. § 706. *Nat'l Gov't*

*Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019). In accordance with the APA, this Court reviews an agency's procurement decisions to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A plaintiff succeeds on the merits where it demonstrates that either: "(1) the [agency]'s decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).

An agency's decision is arbitrary and capricious under the APA standard of review if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015) (quoting *Ala. Aircraft Indus.*, 586 F.3d at 1375); *Sharpe v. United States*, 935 F.3d 1352, 1358–59 (Fed. Cir. 2019). Translated to the context of the allegations in this case, "agencies must follow the terms of their solicitation when awarding a contract." *IAP World Servs., Inc. v. United States*, 152 Fed. Cl. 384, 397 (2021); *see also FreeAlliance.com, LLC v. United States*, 159 Fed. Cl. 506, 512 (2022) ("While matters within an agency's discretion are afforded deference, an agency is still required to enforce the terms of a solicitation.").

The GAO's earlier decision in this procurement is not binding on this Court. Indeed, this Court decides the merits of ATSC's pending motion and case without deference to the GAO. *Scott Techs., Inc. v. United States*, 168 Fed. Cl. 705, 714 n.5 (2023) ("The Court is not bound by GAO decisions, and it follows that the parties are not bound to arguments advanced before the GAO either."); *Eagle Techs., Inc. v. United States*, 163 Fed. Cl. 692, 705 n.2 (2022) ("[T]he Court is not bound by and does not owe deference to the GAO's holding."); *VS2, LLC v. United States*, 155 Fed. Cl. 738, 766 (2021) ("Federal Circuit precedent does not require that this Court simply defer to GAO's decision . . . or the Agency's reliance upon it.").

**B. The Role of the Administrative Record and this Court's Fact Finding**

This Court typically conducts its APA assessment of the government's challenged procurement decision(s) — in an action pursuant to 28 U.S.C. § 1491(b) — via motions for judgment on the administrative record ("MJAR"), RCFC 52.1(c), a process "properly understood as intending to provide for an expedited trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The process is "designed to provide for trial on a paper record, *allowing fact-finding by the trial court*." *Id.* (emphasis added). In deciding cross-motions for judgment on the administrative record, this Court considers "whether, given all the disputed and undisputed facts, a party has met its burden of proof

based on the evidence of record." *XOtech, LLC v. United States*, 950 F.3d 1376, 1380 (Fed. Cir. 2020) (quoting *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018)); *see also Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021).

In this case, the parties do not contend that a full administrative record and MJAR briefing will change the fundamental, dispositive facts and legal issues the parties have already presented to the Court. Accordingly, the Court resolves the entire matter at the preliminary injunction stage, applying the APA standard of review to, and making factual determinations to the extent necessary from, the record currently before the Court. *Cf. Int'l Res. Recovery, Inc. v. United States*, 64 Fed. Cl. 150, 161 (2005).

### C. Determining Prejudice on the Merits

The Federal Circuit has instructed that "[t]he trial court [is] *required* to determine whether . . . errors in the procurement process significantly prejudiced [a plaintiff]." *Bannum*, 404 F.3d at 1353 (emphasis added); *id.* at 1356 (holding that "the trial court [is required] to make factual findings on prejudice from the record evidence").[2] In a post-award protest, the plaintiff bears the burden of showing not only that the agency's decision is flawed under the APA standard of review but also that some prejudice flowed from that error. In short, a plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the errors." *Id.* at 1353 (citing *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1313, 1319 (Fed. Cir. 2003) and *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed. Cir. 1999)).[3]

Determining whether an agency's error was prejudicial "is always required before setting aside a bid award, regardless of whether the error identified at the first step was arbitrary and capricious action or, instead, a violation of law." *Sys. Stud. & Simulation,*

---

[2] Thus, the Federal Circuit noted that it "reviews such [factual] findings for clear error." *Bannum*, 404 F.3d at 1354 ("Nor should the review of a Court of Federal Claims prejudice determination be premised on an 'arbitrary and capricious' review. That review standard goes to the agency's compliance with the law, whereas the prejudice determination assesses whether an adjudged violation of law warrants setting aside a contract award."); *id.* at 1357 ("[T]he trial court's factual determination on prejudice . . . is entitled to review for clear error like any finding in a bench trial, and the special concerns applicable to bid protest actions do not alter that review here.").

[3] *See also Noble Supply & Logistics LLC v. United States*, 168 Fed. Cl. 439, 447 (2023) ("[T]he court holds a trial on the administrative record and must determine whether a party has met its burden of proof based solely on the evidence contained in that record." (citing *Bannum*, 404 F.3d at 1355)); *Navarre Corp. v. United States*, 168 Fed. Cl. 361, 367-68 (2023) (explaining that "the parties are limited to the administrative record, and the Court must make findings of fact as if it were conducting a trial on a paper record" and "will then determine whether a party has met its burden of proof based on the evidence in the record" (*Bannum*, 404 F.3d at 1354-55)); *Karthik Consulting, LLC v. United States*, 168 Fed. Cl. 95, 103 (2023) ("The protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency's decision.").

*Inc. v. United States,* 22 F.4th 994, 996 (Fed. Cir. 2021) (citing *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1308 n.6 (Fed. Cir. 2021) ("The APA does not provide an exception to the prejudicial-error rule for arbitrary and capricious action.")). Specifically, "[d]emonstrating prejudice" requires that "the plaintiff show more than a bare possibility of receiving the award." *Id.* (citing *Bannum*, 404 F.3d at 1358, where the Federal Circuit affirmed the trial court's determination that the plaintiff had not demonstrated a substantial chance of award because its "argument rest[ed] on mere numerical possibility, not evidence"). The Federal Circuit has further reaffirmed that it "review[s] the legal standard for prejudice de novo," but this Court's "factual findings underlying the prejudice determination for clear error." *Id.* (citing *WellPoint Military Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (citing *Bannum*, 404 F.3d at 1353–54)).

### III. DISCUSSION: THE COURT DENIES ATSC'S MOTION FOR A PRELIMINARY JUNCTION AND CONCLUDES THAT DEFENDANTS ARE ENTITLED TO JUDGMENT

The GAO's decision thoroughly summarizes the RFP provisions at issue:

> The RFP provided detailed proposal preparation instructions in section L of the RFP, and warned that "[n]on-conformance with the instructions provided in this section may result in an unfavorable proposal evaluation." Relevant here, the solicitation imposed on proposals a 25-page limitation for the technical/management volume and a 12-page limitation (or 4 pages for each of up to three contract references) for the past performance volume. With respect to both proposal volumes at issue, the solicitation established, among other things: (1) the use of 8.5 x 11 inch paper; (2) margins of 1 inch; and (3) that "minimum type size shall be 12 point Arial standard font with single spacing (not to exceed 46 lines per page)." The RFP elaborated that "[t]ypesetting, font compression, or other techniques to reduce character size or spacing are not permitted and are considered a deliberate attempt to circumvent the page limitations. This includes setting the paragraph line spacing, a feature of MS [Microsoft] Word, "exactly at 12 point."

*ATSC*, 2024 WL 3687959, *3 (quoting RFP § L) (internal citations removed). The key restriction at issue — which ATSC claims PGI's proposal violated — is contained in this RFP provision:

> Legible tables, charts, graphs, and figures may be used wherever practical to depict organizations, systems and layout, implementation schedules, etc. These displays shall

> not exceed 11 by 17 inches in size.  Foldout pages may only be used for large tables, charts, graphs, diagrams and schematics, not for pages of text.  For tables, charts, graphs and figures, the text shall be no smaller than:
>
> Art: 8 point Arial
> Tables: 8 point Arial
> Titles: 10 point Arial, bold, initial cap.

*ATSC*, 2024 WL 3687959, *3 (quoting RFP § L).[4]  The solicitation provided that that page limits "shall be treated as maximums" and any "excess pages will not be read or considered in the evaluation of the proposal."  *Id.*

Reviewing those provisions in the course of resolving ATSC's protest, the GAO concluded "that the solicitation did not include an explicit limitation that would curtail an offeror's discretion to use narrative text in figures, tables, or other graphic representations."  *ATSC*, 2024 WL 3687959, *6.  The GAO further rejected ATSC's argument "that the solicitation's use of the words 'table,' 'chart,' 'graph,' and 'figure' operate to limit the content presented within those figures."  *Id.*  In sum, the GAO concluded:

> Because the RFP here (1) established font size requirements; (2) provided an exception to those requirements for figures; and (3) did not limit the content that could be included in those figures or otherwise prohibit offerors from using tables in any particular volume of the proposal, we have no basis to find that the agency was unreasonable when it determined that PGI's use of exhibits in its proposal was consistent with the solicitation.

*Id.*

---

[4] "[W]hen a solicitation provision uses *mandatory* language that is clear and unambiguous, '[t]he dispositive issue is not whether [the offeror's] proposal was reasonable, but whether it complied with the mandatory requirements of the solicitation.'"  *WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 273 (2021) (quoting *Beta Analytics Int'l, Inc. v. United States*, 44 Fed. Cl. 131, 139 (1999) ("The solicitation's use of terms such as 'shall' and 'must,' as opposed to, for example, 'should' or 'may,' reinforces plaintiff's interpretation that a compliant proposal required four distinct labor categories, each performing the number of hours set forth in the solicitation.")); *see also Red River Holdings, LLC v. United States*, 87 Fed. Cl. 768, 787 (2009) ("Proposals must be complete and conform to the Solicitation.").

The Court disagrees with the GAO's interpretation of the RFP provision at issue, even while agreeing with its ultimate holding in favor of the government. In particular, the Court is concerned not with any putative limitation imposed by the words "tables, charts, graphs, and figures," *per se*, but with the words that follow them. In context, "[l]egible tables, charts, graphs, and figures may be used wherever practical to depict organizations, systems and layout, implementation schedules, etc." means that the RFP includes limitations on what those presentation features may be used for, as enumerated in the latter part of the sentence: "to ***depict*** organizations, systems and layout, implementation schedules, ***etc.***" *ATSC*, 2024 WL 3687959, *3 (quoting RFP § L) (emphasis added).

The words "depict" and "etc." together signal that the Solicitation did *not* provide offerors with *carte blanche* to take narrative proposal text that otherwise must be in 12-point font, shrink it to 8-point font, draw a box around it, call it a table or chart, and call it a day. Rather, according to the Solicitation, a table or chart could be used only "to depict" a class of particular items — "organizations, systems and layout, implementation schedules, etc." — *i.e.*, ideas or structures that are more easily or traditionally represented in graphical, rather than narrative, form. *Id.* In that regard, the word "depict" means "[t]o draw" or "figure." *Oxford English Dictionary*, s.v. "depict (*v.*)," July 2023; *see also Merriam-Webster's Unabridged Dictionary*, s.v. "depict," accessed September 9, 2024, https://unabridged.merriam-webster.com/unabridged/depict ("to form a likeness of by drawing or painting").

While "depict" may also mean "describe" or "to portray in words," *see Merriam-Webster's Unabridged Dictionary*, the word "etc." in the provision at issue also does some interpretive lifting. The abbreviation "etc." — a common shorthand for the Latin phrase "et cetera" — literally means "and others" and "usu[ally] indicates additional, unspecified items in a series." ET CETERA, *Black's Law Dictionary* (12th ed. 2024). In colloquial language and as a legal term, it invokes the "hermeneutic canon *ejusdem generis*." *Myers v. Town of Colmar Manor*, 457 F. Supp. 3d 480, 491 (D. Md. 2020) (explaining that "where the general words in a statute, such as 'other thing of value' follow the designation of particular things or classes of subjects, such as 'money, credit, goods, wares,' etc., the general words in the statute will usually be construed to include only those things of the same class or general nature as those specifically antecedently mentioned") (internal ellipses omitted) (quoting *State v. Sinclair*, 274 Md. 646, 658 (1975)); *see also Int'l Bus. Machines Corp. v. Iancu*, 759 F. App'x 1002, 1007 (Fed. Cir. 2019) (explaining that the term "'etc.' . . . indicate[s] that only things of a type similar to the itemized ones are covered"); *Archer Daniels Midland Co. v. United States*, 561 F.3d 1308, 1313 (Fed. Cir. 2009) (holding that the "rule of *ejusdem generis* . . . limits the additional [things] included by the general phrase 'etc.' to others of the types listed"); *Gov't Emp. Ins. Co. v. Cain*, 226 F. Supp. 589, 592 (D. Md. 1964) (describing "etc." as a "catchall," and explaining that "[t]o the extent that it has meaning, the Court concludes that ejusdem generis has application"); *Richard v. Deutsche Bank Nat. Tr. Co.*, 2012 WL 1082602, *3 n.4

(D. Or. Mar. 30, 2012) ("[T]he meaning of 'etc.' in this context must be interpreted in light of the maxim *ejusdem generis.* Whatever methods of payment are included within the "etc." must in all cases be of the same kind as the methods listed before the 'etc.'").

Thus, having read the operative sentence from Section L of the RFP as a whole,[5] the Court is convinced that the RFP limits the use of "tables, charts, graphs, and figures" — and thus the smaller, 8-point font size — to depictions of "organizations, systems and layout, implementation schedules" *and similar items*, namely those naturally lending themselves to representation in graphical rather than narrative form. An organizational chart, systems layout, and schedule all lend themselves to be illustrated graphically, while not exhausting the list of types of information that fit the bill. "Etc." indicates that the list is neither limited to the specific examples given, nor infinitely capacious. Yet, however elastic that phrase may be, the GAO effectively held that it had *no* meaning. The GAO was wrong to effectively write the limitation out of the solicitation. *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004); *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

Although this Court agrees with ATSC about what offerors were (and were not) permitted to include in charts or tables — utilizing a smaller font to increase the volume of information conveyed to the agency and thus, presumably, gain an advantage — ATSC still has the burden to demonstrate that it adhered to its own reading of the Solicitation. Put differently, ATSC cannot complain that the government interpreted and applied a particular reading of the Solicitation if ATSC's proposal evinces the same reading (*i.e.*, even if PGI leveraged that reading to a greater degree).

The principle that differences in degree will not save a protestor from failing to show prejudice is repeatedly illustrated in recent case law from this Court. In *VS2, LLC v. United States*, for example, the plaintiff argued that its competitor, Vectrus, improperly

---

[5] Particular solicitation language must be "read in context of the solicitation as a whole." *Sallyport Glob. Holdings, Inc. v. United States*, 129 Fed. Cl. 371, 378–79 (2016) (citing *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1354 (Fed. Cir. 2004)); *see also Banknote Corp.*, 365 F.3d at 1353 (explaining that courts must interpret a solicitation "in a manner that harmonizes and gives reasonable meaning to all of its provisions"); *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343–44 (Fed. Cir. 2021) ("[W]e apply the same principles concerning the interpretation of Government contracts to the interpretation of Government solicitations." (citing *Banknote Corp.*, 365 F.3d at 1353 & n.4)); *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("An interpretation that gives meaning to all parts of the contract [or solicitation] is to be preferred over one that leaves a portion of the contract [or solicitation] useless, inexplicable, void, or superfluous."); *Meyers Companies, Inc. v. United States,* 41 Fed. Cl. 303, 310 (1998) ("Contracts and solicitations are to be read as a whole, so as to give meaning to all provisions.") (citing cases, including, *e.g.*, *B.D. Click Co., Inc. v. United States,* 222 Ct. Cl. 290, 299, 614 F.2d 748, 753 (1980)); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996) (criticizing trial court for "improperly focus[ing] on [a] single word . . . rather than looking at [an amendment] as a whole").

"selected and substituted lower-cost labor categories in lieu of those specified in the RFP's spreadsheets that offerors were required to complete." 155 Fed. Cl. 738, 767 (2021). The problem was that VS2 had done the same thing. VS2 attempted to avoid the consequences of its hypocrisy by arguing "that what matters is the degree of substitutions; that is, Vectrus did it more." *Id.* at 768. This Court rejected VS2's argument:

> There is some facial appeal to VS2's point insofar as Vectrus appears, in fact, to have benefited from the substitution strategy a great deal more than VS2. But VS2's attempt to steal a base — that is, skipping over an essential (but faulty) premise of its argument — must be rejected. The simple fact is that VS2 cannot now complain about Vectrus's and the government's interpretation of the Solicitation when VS2 relied upon the very same interpretation when preparing its proposal.

*Id.* at 768 (explaining this conclusion in terms of either "waiver or lack of prejudice"); *see also G4S Secure Integration LLC v. United States*, 2022 WL 211023, at *8 (Fed. Cl. Jan. 24, 2022) ("There has been no prejudice when a bid protestor benefited from the same potentially unlawful discretion from which the awardee benefited."); *ACI Techs., Inc. v. United States*, 161 Fed. Cl. 58, 69 n.3 (2022) ("[E]ven if Plaintiff's argument were correct, it cannot show prejudice because it benefitted from the same alleged error."), *aff'd*, No. 2022-1966, 2023 WL 5814410 (Fed. Cir. Sept. 8, 2023); *Ascendant Servs., LLC v. United States*, 160 Fed. Cl. 275, 287 (2022) ("[I]f Plaintiff's interpretation was correct, it would be barred from raising this argument because Plaintiff actually benefitted from the alleged misinterpretation.").

Judge Meyers applied the foregoing principle articulated in *VS2* to facts virtually identical to this case. He ruled that a plaintiff cannot complain about the formatting of another offeror's proposal where the plaintiff itself employed the same formatting:

> The problem, however, is that AttainX's own Technical Proposal makes use of text boxes (i.e., tables) that use narrative text to explain the required proven innovative methods that AttainX proposed. AttainX cannot contend that narrative text and tables must be distinct when its own proposal uses narrative text in tables as well. *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1162 (Fed. Cir. 2004) (indicating that protester must have relied on its interpretation of the solicitation when it prepared its proposal).

10

*Allicent Tech., LLC v. United States*, 166 Fed. Cl. 77, 160 (2023), *as amended* (July 18, 2023), *recons. den.*, No. 22-1380C, 2023 WL 4287196 (Fed. Cl. June 30, 2023) (internal citation omitted).

These cases reflect that what makes agency action arbitrary and capricious is the agency's reliance on idiosyncratic or unknowable interpretations of a solicitation, which often manifest in apparent waivers of putative solicitation requirements. By contrast, where there are indications that the agency's decision was based on an interpretation known — indeed, relied upon and utilized — by the plaintiff protestor and the awardee alike, there is no viable claim that the agency is acting outside its authority and discretion. The fact that a plaintiff and awardee utilized a common interpretation of solicitation language to different degrees is irrelevant. Plaintiffs may throw stones from their glass houses, as it were, but — as with the cliché about the pot and the kettle — it is a losing strategy. *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 698 (2022) ("[Plaintiff's] argument regarding [the contract awardee's] compliance with the RFQ's putative . . . requirements is the legal equivalent of throwing stones in a glass house[.]").

That is precisely what happened here. Pursuant to its own reading of the RFP, ATSC utilized at least one table to include narrative text in a smaller font. *See* ECF No. 24 at 7 (government's opposition to ATSC's motion for a preliminary injunction (replicating "Figure 2" from ATSC's proposal)). Yet ATSC asks the Court to call improper PGI's use of a table in exactly the same way. During the August 20, 2024, teleconference, the Court challenged ATSC's counsel of record to explain why Figure 2 from ATSC's proposal was different in kind than a table from PGI's proposal that ATSC deems improper, *see* ECF No. 24 at 11, but he could not do so. That does not reflect a failure of imagination or zealous advocacy on counsel's part; there is, in fact, simply no discernable difference *in kind* between the two tables. ATSC's insistence that there is a difference is nothing more than *ipse dixit*.

The Court thus agrees with the government (and the GAO's conclusion) that ATSC "committed the same alleged violation that [PGI] purportedly did" and thus cannot succeed on the merits. ECF No. 24 at 11; *see also ATSC*, 2024 WL 3687959, *6 ("The protester's proffered interpretation is also belied by its own proposal which includes several tables that include text."). By relying on the very same interpretation of the RFP it now challenges, ATSC either waived its argument or was not prejudiced. Either way, ATSC cannot succeed on the merits of its case. Defendants are thus entitled to judgment.

In the alternative, and specifically with regard to ATSC's request for a preliminary injunction, this Court further finds for the government on the balance of harms and the public interest, two of the four considerations the Court must weigh. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) ("In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm

if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."); *see also Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *Cont'l Serv. Grp., Inc. v. United States*, 722 F. App'x 986, 993 (Fed. Cir. 2018) ("The party seeking a preliminary injunction must establish that '[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'  The grant or denial of a preliminary injunction is within the sound discretion of the trial court.") (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) and citing *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 865 (Fed. Cir. 2017)).

Based on the (classified) harm declaration submitted by a CIA official in support of the government's opposition brief, the Court concludes without hesitation that a preliminary injunction would unduly risk harming the agency and the country's national security.  *See* ECF No. 24 at 19-24; 28 U.S.C. § 1491(b)(3) (requiring our Court to "give due regard to the interests of national defense and national security").  The significant level of detail in the classified declaration is highly credible, persuasive, and relates directly to the government's need to complete the procurement process expeditiously.  In the same vein, the public interest factor weighs heavily in favor of denying the preliminary injunction and allowing the government to proceed with its procurement.

The Court thus denies ATSC's motion for a preliminary injunction (even assuming for the sake of argument ATSC had demonstrated a high likelihood of success on the merits).

### IV. CONCLUSION

Plaintiff's motion for a preliminary injunction is **DENIED**.  Furthermore, because the Court concludes that Plaintiff cannot succeed on the merits of its complaint, and because the parties agree that no further proceedings are necessary, the Court directs the Clerk to enter **JUDGMENT** for Defendant, the United States, and Defendant-Intervenor, PGI.

**IT IS SO ORDERED.**

                                    s/Matthew H. Solomson
                                    Matthew H. Solomson
                                    Judge